# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 3:12-CR-00469-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ENRIQUE TRUJILLO-ALVAREZ** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

S. Amanda Marshall, United States Attorney, Gregory R. Nyhus and Ryan W. Bounds, Assistant United States Attorneys. 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902. Attorneys for United States of America.

Christopher J. Schatz, Assistant Federal Public Defender, 101 S.W. Main Street, Suite 1700, Portland, OR 97204. Attorney for Defendant.

**SIMON, District Judge.**

This case requires the Court to reconcile the Bail Reform Act of 1984 ("BRA"), as amended, 18 U.S.C. § 3141, *et seq.*, with the Immigration and Nationality Act of 1965 ("INA"), 8 U.S.C. § 1101, *et seq.* A reconciliation is necessary because a tension has emerged in the application of these two laws by two separate departments within the Executive Branch, the U.S. Department of Justice and the U.S. Department of Homeland Security.

The Office of the U.S. Attorney, which is part of the U.S. Department of Justice, is the government's primary agency responsible for the prosecution of federal offenses.[1] In the BRA, Congress established a comprehensive set of rules and procedures for determining when, and under what conditions, a person charged with a federal offense must be released from custody while awaiting trial. The Bureau of Immigration and Customs Enforcement ("ICE"), which is part of the U.S. Department of Homeland Security, is the government's primary agency responsible for the removal and deportation of aliens who have no lawful right to be in the United States.[2]

When an alien who has no lawful right to be in the United States is found in this country, ICE may remove and deport that person under the authority of the INA. Alternatively, if such an alien is believed to have committed a federal offense, including illegal reentry, ICE may choose

---

[1] The term "offense" means "any criminal offense . . . which is in violation of an Act of Congress and is triable in any court established by Act of Congress." 18 U.S.C. § 3156(a)(2).

[2] The duties performed by ICE were previously undertaken by the Immigration and Naturalization Service ("INS") within the U.S. Department of Justice. The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, created both the U.S. Department of Homeland Security and the cabinet-level position of Secretary of Homeland Security. ICE was created under the authority of the Homeland Security Act and now ultimately reports to the Secretary for Homeland Security. The INS ceased to exist under that name in 2003 when most of its functions were transferred to the Department of Homeland Security.

to postpone the removal and deportation of that person while the U.S. Attorney's Office brings a criminal prosecution.[3]  Which pathway to take in any given case is a policy decision, and it is for the Executive Branch to determine.

When the Executive Branch decides that it will defer removal and deportation in favor of first proceeding with federal criminal prosecution, then all applicable laws governing such prosecutions must be followed, including the BRA.  In such cases, if a judicial officer[4] determines under the BRA that a particular defendant must be released pending trial because that defendant does not present a risk of either flight or harm, and the government has chosen not to appeal that determination, the Executive Branch may no longer keep that person in physical custody.  To do so would be a violation of the BRA and the court's order of pretrial release.

In this case, the Defendant is alleged to be an alien and citizen of Mexico with no lawful right to be in the United States.  He has been charged with the crime of illegal reentry.  He also has longstanding ties to and connections with the local community.  He has lived with his wife in the local area for more than 15 years, and they have three minor children who are all U.S. citizens.  He also has a history of stable employment in the area and is not accused of a crime of violence.  For these reasons, a United States Magistrate Judge determined under the BRA that the Defendant does not present a risk of flight or any danger to any person or to the community if released while awaiting his upcoming trial.  Under the BRA, the Magistrate Judge ordered that the Defendant be released pending trial, subject only to those specific conditions imposed by the Magistrate Judge.  If the Executive Branch chooses not to release the Defendant and instead

---

[3] ICE may also choose to postpone removal and deportation while state or local criminal prosecution occurs, but that is not at issue in this case.

[4] The term "judicial officer" is defined in 18 U.S.C. § 3156(a)(1) and includes, among others, any Justice or Judge of the United States and any United States Magistrate Judge.

decides to abandon criminal prosecution of the pending charge and proceed directly with Defendant's removal and deportation, the law allows the Executive Branch to do that. If, however, the Defendant is not released pending trial as directed by the Magistrate Judge pursuant to the BRA, the pending criminal prosecution of the Defendant may not go forward. To hold otherwise would deprive the Defendant of his statutory right to pretrial release under the Bail Reform Act and possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel, respectively.

As explained more fully below, the Executive Branch will be provided with a reasonable, albeit limited, time in which to make this decision. The Executive Branch has one calendar week from the date of this Opinion and Order to return the Defendant to the District of Oregon and release him subject to the conditions previously determined by the Magistrate Judge. If that does not occur, the criminal charge now pending against the Defendant will be dismissed with prejudice.

## I.  FACTUAL BACKGROUND

Enrique Alvarez-Trujillo[5] is 46-year-old male of Hispanic heritage. He has lived in the Portland metropolitan area for the last 18 years. He has a home, where he and his wife, with whom he has been living for the past 15 years, are raising their three children, all of whom are U.S. citizens. He is employed in several jobs. His primary employer reports that Mr. Alvarez-

---

[5] Although charged as "Enrique Trujillo-Alvarez," Defendant's counsel represents that Defendant's true and correct name is "Enrique Alvarez-Trujillo." Many of the background facts describing Mr. Alvarez-Trujillo are taken from his counsel's representations to the Court, without objection from the government for the purposes of the pending motions. Other background facts come from the testimony and exhibits received during the evidentiary hearing held on October 10, 2012, in connection with the pending motions. Doc. 22. Citations to the official court transcript from that hearing appear in this Opinion and Order as "Tr."

Trujillo is a "very good and loyal employee."  Another employer states that Mr. Alvarez-Trujillo

is an "excellent worker."  In May 2012, Mr. Alzarez-Trujillo's youngest daughter, who was then

eight years old, became seriously ill with encephalitis and was hospitalized for approximately

two months.  During her hospital stay, Mr. Alvarez-Trujillo was with his daughter "the whole

time she was in the hospital."  He is the sole financial support for his family.  Mr. Alvarez-

Trujillo does not use drugs and last consumed alcohol more than eight years ago.

While in his twenties, Mr. Alvarez-Trujillo had some problems with the criminal law.  He

was convicted of a drug trafficking offense in California in 1989.  On September 17, 1993, he

was deported from the United States as an alien and citizen of Mexico pursuant to an Order of

Deportation.

On August 8, 2012, Mr. Alvarez-Trujillo was arrested in the Portland area for driving

with a suspended driver license.[6]  He was booked and released.  As a result of this contact with

local law enforcement, Mr. Alvarez-Trujillo came to the attention of ICE.  On August 27, 2012,

an ICE agent arrested Mr. Alvarez-Trujillo and placed him under ICE custody.  ICE then served

Mr. Alvarez-Trujillo with a Notice of Intent/Decision to Reinstate Prior Order (Form I-871) and

advised him of his rights.  Mr. Alvarez-Trujillo declined to make a statement.  After concluding

that Mr. Alvarez-Trujillo was an alien subject to removal, an ICE officer reinstated Mr. Alvarez-

Trujillo's 1993 Order of Deportation, in accordance with Section 241(a)(5) of the INA, 8 U.S.C.

§ 1231(a)(5).

---

[6] In 2008, the Oregon Legislature amended the state law governing Oregon driver
licenses; under the new law, "proof of legal presence in the United States" was required to obtain
either an initial license or a renewal of a previously-issued license.  Or. Rev. Stat. § 807.021.

Also on August 27, 2012, an ICE Deportation Officer, following prosecution guidelines developed by the U.S. Attorney's Office, presented the case against Mr. Alvarez-Trujillo to the U.S. Attorney's Office for criminal prosecution. On September 4, that same ICE Deportation Officer caused an Immigration Detainer–Notice of Action (an "ICE detainer") to be lodged against Mr. Alvarez-Trujillo. Under this ICE detainer, the U.S. Department of Homeland Security informed the U.S. Marshals Service in Portland that ICE had "[o]btained an order of deportation or removal from the United States" for Mr. Alvarez-Trujillo. The ICE Deportation Officer explained that such an immigration detainer is filed in every case submitted to the U.S. Attorney's Office for prosecution "[i]n order to ensure that the alien returns to ICE custody at the end of their proceedings . . . ." Tr. 42.

An indictment against Mr. Alvarez-Trujillo was returned by the grand jury in the District of Oregon on September 5, 2012, and was filed with the District Court on September 6. Doc. 1. The indictment charges one count of illegal reentry in violation of 8 U.S.C. § 1326(a). *Id*. On September 7, ICE transported Mr. Alvarez-Trujillo to the U.S. District Court in Portland and turned him over to the U.S. Marshals Service. Later that day, Mr. Alvarez-Trujillo was brought before United States Magistrate Judge Paul Papak for arraignment on the indictment. Mr. Alvarez-Trujillo entered a plea of not guilty, and the court set a trial date of November 13, 2012, in Portland. Doc. 6. During his arraignment, Mr. Alvarez-Trujillo, through his court-appointed counsel, requested that he be allowed an opportunity to prepare for a detention/release hearing. Judge Papak granted that request.

On September 11, 2012, Mr. Alvarez-Trujillo appeared before United States Magistrate Judge John Acosta for a detention/release hearing. The ICE Deportation Officer, serving as the

government's case agent, sat at counsel table next to the Assistant United States Attorney. At the

conclusion of the detention/release hearing, Judge Acosta stated, among other things, that:

> The Pretrial Services Report reflects a background, putting aside the ICE detainer, that we often see when considering detention or release of an individual defendant. Ties to the community, family members present for an extended period of time, the individual present for an extended period of time, he has stable employment history, and he has at least two other non-family members who have come forward to talk on his behalf with respect to his personal characteristics, both of whom are decidedly favorable in that regard. I do not see, and I do not, Mr. [Assistant United States Attorney] Nyhus correct me if I'm wrong, I don't hear the government arguing that Mr. Alvarez-Trujillo is a danger to the community if released. The government's question was more to the risk of flight. I find on this record that the government hasn't met its burden that he is a flight risk if released. Whether or not ICE picks him up once he is released, that's up to ICE and that's not within my control. If there is a valid detainer or deportation order that's out there and ICE can execute it, Mr. Alvarez-Trujillo will have to deal with that in a different forum, but that's not for this Court to decide one way or the other. On this record, I think the defendant is releaseable and I'm going to order his release.

Doc. 14-1, at Ex. A, p. 2. Judge Acosta then signed an Order Setting Conditions of Release,

Doc. 10, which included as conditions of pretrial release that Mr. Alvarez-Trujillo report as

directed by the U.S. Pretrial Services Office and that he limit his travel to Multnomah County,

Washington County, and Clackamas County, Oregon, unless he receives prior approval from

U.S. Pretrial Services. The government, through its Assistant United States Attorney, moved

Judge Acosta to stay the execution of his order pending review. Judge Acosta denied that

motion. Doc. 14-1, at Ex. A, p. 3. The government did not seek review by an Article III judge

of the release order issued by Judge Acosta or otherwise appeal Judge Acosta's decision.

On September 12, 2012, ICE agents took Mr. Alvarez-Trujillo into custody under the

previously lodged ICE detainer. ICE then removed Mr. Alvarez-Trujillo from the District of

Oregon and transported him to the ICE Northwest Regional Immigration Detention Center in

Tacoma, Washington. An Assistant Field Office Director with ICE Enforcement and Removal Operations testified that ICE has the discretion whether to execute on such a detainer. Tr. 66.

On September 24, 2012, Mr. Alvarez-Trujillo moved for an order to show cause why ICE should not be found in contempt of court; Mr. Alvarez-Trujillo also moved for certification of facts to the district court by the magistrate judge and for other relief as appropriate. Doc. 13. This Court set a hearing on Defendant's motion for October 10, 2012. On September 28, 2012, Mr. Alvarez-Trujillo moved for a stay of his removal proceeding and for an order directing ICE to transport him to the District of Oregon to attend the hearing set for October 10, 2012. Doc. 17. On October 3, 2012, the government filed its responses to Defendant's two motions.

On October 10, 2012, this Court held a hearing on Defendant's motions. The Court had not yet ruled on Defendant's motion for an order directing ICE to transport Mr. Alvarez-Trujillo back to the District of Oregon for purposes of attending the October 10th hearing, and he was not present during that hearing. The two witnesses from ICE who testified during the hearing were the ICE Deportation Officer and the Assistant Field Office Director with ICE Enforcement and Removal Operations, referred to above. Doc. 22. In addition, several exhibits were received. *Id*. At the conclusion of the hearing, the Court requested supplemental briefing, which was received on October 17 and 18, 2012.

## II. DISCUSSION

### A. The Bail Reform Act of 1984, as Amended

The Eighth Amendment to the U.S. Constitution states, in relevant part: "Excessive bail shall not be required . . . ." In enacting the Bail Reform Act of 1966, Congress declared:

> The purpose of this Act is to revise the practices relating to bail to assure that *all persons*, regardless of their financial status, shall not needlessly be

detained pending their appearance to answer charges, to testify, or pending appeal, *when detention serves neither the ends of justice nor the public interest.*

Pub. L. 89-465 (emphasis added). In 1984, the Bail Reform Act was again revised, and it has since been amended even further. But these underlying principles, tracing their roots back to 1791 and beyond, still guide the law.

Under the BRA, Congress has determined that any person charged with an offense under the federal criminal laws *shall* be released pending trial: (a) on personal recognizance; (b) upon execution of an unsecured appearance bond; or (c) on a condition or combination of conditions, *unless* a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see also* 18 U.S.C. § 3142(a), (b). *See generally United States v. Salerno,* 481 U.S. 739, 755 (1987) (upholding Bail Reform Act of 1984 and noting that it "authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel"); *United States v. Sabhnani,* 493 F.3d 63, 75 (2d Cir. 2007) (the Bail Reform Act requires a court to order the pretrial release of a defendant on personal recognizance or an unsecured appearance bond "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community") (quoting 18 U.S.C. § 3142(b)).

The government does not argue that Mr. Alvarez-Trujillo presents any danger to the safety of any other person or to the community. In addition, although the existence of an ICE detainer may be considered as a factor in assessing the risk that a particular defendant will flee,

*United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 964 n.3 (E.D. Wis. 2008), Judge Acosta determined that based on Mr. Alvarez-Trujillo's longstanding ties to the community and other related factors, he did not pose a risk of voluntary flight pending trial if released on the condition that he be subject to supervision by U.S. Pretrial Services in the District of Oregon. As stated above, the government did not seek review of that determination.

In promulgating the BRA, "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *United States v. Adomako,* 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001). In fact, the BRA expressly refers to persons who are not citizens of the United States in only one portion of the BRA. Section 3142(d) provides, in relevant part, that if the judicial officer determines that a person is not a citizen of the United States *and* "such person may flee or pose a danger to any other person or the community," then the judicial officer shall order the *temporary* detention of such person in order for the attorney for the government to notify the "the appropriate official of the Immigration and Naturalization Service." 18 U.S.C. §3142(d).

There is nothing else in the BRA that places any special or additional conditions on persons who are not citizens or who are awaiting trial on charges of illegal reentry. In fact, 18 U.S.C. § 3142(g) expressly lists the factors that a court should consider when determining whether a particular defendant should be released under pretrial supervision or confined pending trial, and alien status is not a listed factor. Thus, persons who are not citizens must be treated under the BRA like all other persons charged with an offense, which is precisely what Judge Acosta did.

**B.     The Immigration and Nationality Act, as Amended**

The Immigration and Nationality Act of 1965, as amended, 8 U.S.C. § 1101, *et seq.* ("INA"), contains the basic body of immigration law in the United States.  Among other things, the INA charges the U.S. Secretary of Homeland Security with "the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, [or] Attorney General, . . . ."  8 U.S.C. § 1103(a)(1).  Section 241 of the INA also expressly provides for the detention and removal of aliens who are ordered removed.  8 U.S.C. § 1231.

When an alien is subject to a removal order, the INA provides that the Executive Branch "shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  This is referred to as the "removal period."  *Id.*  In this case, however, the 90-day removal period has not yet commenced.

The removal period only begins to run on the *latest* of the following:

> (i)     The date the order of removal becomes administratively final.
>
> (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)   *If the alien is detained or confined* (except under an immigration process), *the date the alien is released from detention or confinement.*

8 U.S.C. § 1231(a)(1)(B) (emphasis added).  Although the statutory phrase "released from detention or confinement" is not defined, in the context of the entirety of Section 1231 the most reasonable interpretation of that phrase is that it refers to release from incarceration pursuant to a final judgment of conviction as entered by a court of competent jurisdiction.  *See, e.g.,* 8 U.S.C.

§ 1231(a)(4)(A) ("Except as provided in section 259(a) of title 42 and paragraph (2), the

Attorney General [now, the Secretary of Homeland Security] may not remove an alien who is

sentenced to imprisonment until the alien is released from imprisonment. Parole, [post-

conviction] supervised release, probation, or possibility of arrest or further imprisonment is not a

reason to defer removal."); *see also United States v. Rembao-Renteria,* No. 07-mj-399

(JNE/ABJ), 2007 WL 2908137, at *3 (D. Minn. Oct. 2, 2007) ("Parole, supervised release,

probation, and the possibility of being imprisoned *again* all assume a conviction. The Court

does not read this list to include conditions placed on a defendant who has been charged but not

convicted.").

In addition, a person who has been released subject to conditions of pretrial supervision is

still "confined" because they are subject to restraints not shared by the public generally that

significantly confine and restrain their freedom. *Cf. Hensley v. Mun. Ct.,* 411 U.S. 345, 351

(1973) (holding that a person is in "custody" for purposes of the habeas corpus statute when the

person is subject to restraints "not shared by the public generally"); *see also United States v.*

*Castro-Inzuna,* No. 12-30205, Dkt. 9 (Order) (9th Cir. July 23, 2012) (citing *Hensley* in support

of the same proposition in the context of the INA).

Thus, the 90-day removal period has not yet commenced. Accordingly, there is no legal

requirement, or even any practical necessity, that ICE detain Mr. Alvarez-Trujillo in order to

remove and deport him before the pending criminal proceedings can be concluded.

Moreover, even if the 90-day removal period had begun, there is still no legal

requirement that ICE detain Mr. Alvarez-Trujillo. The INA provides:

> During the removal period, the Attorney General [or the Secretary of
> Homeland Security] shall detain the alien. Under no circumstance during

the removal period shall the Attorney General [or the Secretary of Homeland Security] release an alien who has been found inadmissible under section 1227(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2).  Mr. Alvarez-Trujillo is not accused of committing any of these specified crimes; the only charge that is pending against him is for illegal reentry.  Thus, he is not among the category of aliens who "[u]nder no circumstance" may be released, even after the 90-day removal period begins.

**C.      The "ICE Detainer" Under the Regulatory Framework of the INA**

The INA also provides:

> If the Attorney General [or the Secretary of Homeland Security] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).  Under the statutory authority of 8 U.S.C. § 1103(a)(3), the Executive Branch has issued certain regulations, including one that creates what is called an "ICE detainer."  According to this regulation:

> Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency.  A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, *for the purpose of arresting and removing the alien*.  The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a) (emphasis added).  As expressly stated in this regulation, the purpose of an ICE detainer is for "arresting and removing the alien."  Thus, if the Executive Branch intends to

exercise its ICE detainer for the purpose of removing and deporting Mr. Alvarez-Trujillo, it appears that it may well have the legal authority to do so. ICE does not, however, have the authority to detain Mr. Alvarez-Trujillo for the purpose of avoiding the pretrial release provisions of the BRA.

**D.**    **Reconciling the BRA and the INA**

The interplay between the BRA and the INA has caused both confusion and tension. In numerous cases throughout the United States, the government has argued for the retention of persons charged with illegal reentry who are the subject of an ICE detainer. In those cases, the government has argued that the existence of the ICE detainer and the possibility that the person may be removed or deported by ICE before trial is sufficient under the BRA to satisfy the government's burden of showing that there are no conditions that will reasonably assure the appearance of the defendant at trial. In addition, in the present case, the government argues that there has been no violation of the BRA because Mr. Alvarez-Trujillo is being held by ICE and not at the direction of the U.S. Attorney's Office. Both arguments are without merit.

**1.**    **The government's argument for an "ICE detainer" exception to the BRA**

The government's first argument has been rejected by many courts. In *United States v. Barrera-Omana,* 638 F.Supp.2d 1108, 1111 (D. Minn. 2009), District Judge James M. Rosenbaum explained,

> the government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be. *See United States v. Delker,* 757 F.2d 1390, 1399 (3d Cir. 1985) (''[T]he characteristics that will support pretrial detention may vary considerably in each case, and thus Congress has chosen to leave the resolution of this question . . . to the sound discretion of the court's acting on a case-by-case basis.'') (quotations omitted). If the Court accepted the government's argument, Congress's carefully crafted detention plan, set forth [in the

Bail Reform Act] at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer. No other factor matters; neither danger to the community nor risk of flight, nor any kind of individualized consideration of a person before the Court. Each, according to the government, has been swallowed by an ICE detainer.

*Id* (ellipses in original). As interpreted by Judge Rosenbaum, "[t]he risk of nonappearance" must involve "an element of [the defendant's own] volition. *Id.*

Similarly, in *United States v. Montoya-Vasquez,* No. 4:08-CR-3174, 2009 WL 103596 (D. Neb. Jan. 13, 2009), the court stated:

Thus, I conclude that "failure to appear" as used in the Bail Reform Act is limited to the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will. If the government—through ICE or any other authority—prevents his appearance, he has not "failed" to appear.

If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act. Instead, the Act simply requires temporary detention and the giving of notice by the court to immigration officials so they can investigate and determine whether they wish to pursue filing a detainer against the alien defendant. 18 U.S.C. § 3142(d)(1)(B). If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.

Further, had Congress barred aliens against whom immigration detainers are filed from eligibility for release on conditions, such action would raise serious Constitutional issues, not the least of which would be claims of excessive bail, violation of equal protection of the laws, and violation of the separation of powers. I conclude that the risk of removal by ICE, if cognizable at all under the Act, cannot be determinative of the question of a defendant's eligibility for release.

*Montoya-Vasquez,* 2009 WL 103596, at *5; *see also Rembao-Renteria,* 2007 WL 2908137, at *3 ("the certainty of deportation does not translate into certainty of flight").

OPINION AND ORDER, Page 15

In *United States v. Marinez-Patino,* No. 11-CR-64, 2011 WL 902466 (N.D. Ill. Mar. 14, 2011), the court determined that the defendant qualified for release under pretrial supervision notwithstanding that, before turning the defendant over to the United States Attorney for prosecution, ICE administratively reinstated a previously-issued removal order against the defendant. The court rejected the government's argument that the ICE detainer should preclude the defendant's release because ICE could deport the defendant before trial. According to the magistrate judge in that case:

> . . . Section 215.3(g) represents ICE's determination that, when a party to a pending criminal case exits the country without the prosecuting authority's consent, his absence is prejudicial to the interests of the United States. Indeed, when ICE took custody of the defendant in December, ICE could have deported him in the first instance. *See* 8 U.S.C. § 1231(a)(5) (if the Attorney General finds that an alien has reentered the United States illegally after having been removed under an order of removal "the alien shall be removed under the prior order at any time after entry"). ICE did not do so, but instead held the defendant so that the United States Attorney's Office could exercise its discretion to prosecute the defendant. By delivering the defendant to the United States Attorney's Office in this case, rather than simply deporting him immediately, ICE yielded to the judgment of the prosecutorial arm of the Executive Branch that the public's interest in criminally prosecuting the defendant was greater than the public's interest in swiftly deporting him.
>
> Defendant's prosecution is thus the result of both the United States Attorney's Office and ICE—two Executive Branch agencies—exercising their discretion in a coordinated effort to serve the public interest as they see it. To argue now, as the government does, that ICE's interest in deporting the defendant would suddenly trump the United States Attorney's interest in prosecuting the defendant ignores the cooperation (and exercise of discretion) that brought the defendant before this Court in the first place. It also presumes that ICE would immediately remove a defendant retained on bond and thus frustrate his criminal prosecution, when ICE itself has found that the departure of a defendant to a pending criminal proceeding is prejudicial to the interests of the United States.

*Marinez-Patino,* 2011 WL 902466, at *7. The same analysis applies in the case of Mr. Alvarez-Trujillo.

OPINION AND ORDER, Page 16

The issue of whether a defendant's anticipated deportation by ICE under a reinstated removal order on its own justified detention under the BRA was recently presented before the Ninth Circuit in *United States v. Castro-Inzuna*. In an unpublished Order, the Ninth Court held that a reinstated removal order did not, on its own, justify detention under the BRA. In that *per curiam* Order, the panel wrote:

> The district court erred in finding that the government met its burden of showing, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the [defendant's] appearance." *See* 18 U.S.C. § 3142(e), (g); *United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir. 1985). The government has failed to meet its burden to show that the removal period of 8 U.S.C. § 1231(a)(1)(A) will begin while defendant is "in custody" on pretrial release, subject to restraints not shared by the public generally that significantly confine and restrain his freedom. *See* 8 U.S.C. § 1231(a)(1)(B); *cf. Hensley v. Mun. Ct.,* 411 U.S. 345, 351 (1973). Indeed, the government has not shown that defendant's trial, currently set for August 14, 2012, cannot be completed prior to the expiration of the removal period of 8 U.S.C. § 1231(a)(1)(A).
>
> The government also has failed to meet its burden to show that the district court may not assure defendant's appearance at trial by, for example, requiring the surrender of his passport and any other travel documents; enjoining him from obtaining or using any new travel documents; or enjoining the government from interfering with his ability to appear at trial. Additionally, the government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departure control order if it believes that his removal before trial would be contrary to public interest.
>
> Accordingly, the district court's detention order is reversed. This case is remanded to the district court to establish appropriate conditions of release, including a stay of the removal period.

*Castro-Inzuna,* No. 12-30205, Dkt. 9 (9th Cir. July 23, 2012), at *2-3.

## 2. The Executive Branch's prioritizing criminal prosecution over removal

The government also argues in this case that "[t]he Ninth Circuit [in *Castro-Inzunza*] properly concluded that [the ICE detainer] did not [by itself justify detention under the BRA],

but the court of appeals said nothing about ICE's ability to take the defendant back into administrative custody." Govt.'s Am. Supplemental Mem. of Law, at 8 (Doc. 24). The government may be correct that ICE retains the ability to take Mr. Alvarez-Trujillo back into administrative custody–for the purpose of deporting him–but nothing permits ICE (or any other part of the Executive Branch) to disregard the congressionally-mandated provisions of the BRA by keeping a person in detention for the purpose of delivering him to trial when the BRA itself does not authorize such pretrial detention.

Two other regulations issued under the authority of the INA are relevant here. The first provides: "No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." 8 C.F.R. § 215.2(a). The second states that the departure from the United States of any alien shall be "deemed prejudicial to the interests of the United States" if, among other reasons, the alien is a party to "any criminal case . . . pending in a court in the United States." 8 C.F.R. § 215.3(g). Thus, under existing INA regulations no alien shall depart from the United States while that alien is a defendant in a criminal case pending in a court in the United States.[7] In this fashion, the Executive Branch by regulation has made the determination that a criminal proceeding takes priority over removal and deportation. This is also fully consistent with the statutory provisions of the INA. *See, e.g.,* 8 U.S.C. § 1231(a)(1)(B)(iii) (the 90-day removal period will not begin to run until, "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement").

---

[7] There are certain exceptions, but they are not relevant to the pending motions.

In addition, in the BRA itself Congress explained how to reconcile the release and detention provisions of that statute with the administrative deportation provisions of the INA. Under the BRA, if a judicial officer determines both that a person is not a citizen of the United States *and* that *"*such person may flee or pose a danger to any other person or the community*,"* the judicial officer shall order the temporary detention of such a person for the purpose of allowing the government to notify "the appropriate official of the Immigration and Naturalization Service." 18 U.S.C. § 3142(d), especially § 3142(d)(2). The BRA continues: "If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." 18 U.S.C. § 3142(d). In this case, the judicial officer determined that Mr. Alvarez-Trujillo does not present either a risk that he may flee or a danger to any other person or the community. Thus, there is no statutory basis under the BRA for him to be further detained by ICE. Finally, it bears repeating: "If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not." *Montoya-Vasquez,* 2009 WL 103596, at *5.

Accordingly, the Executive Branch has a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person. If ICE takes custody of Mr. Alvarez-Trujillo for the purpose of removing or deporting him, there is little (and probably nothing) that this Court can do about that, which is precisely what Magistrate Judge Acosta stated on the record. If, however, ICE declines to take custody of Mr. Alvarez-Trujillo for the purpose of removing or deporting him, then, as Congress plainly declared in the BRA, such a

person shall be treated "in accordance with the other provisions" of that law, which require his pretrial release subject to the conditions imposed by Judge Acosta. What neither ICE nor any other part of the Executive Branch may do, however, is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA.

**E.      Remedy**

Because the Executive Branch has a choice of whether to deport Mr. Alvarez-Trujillo or have him stand trial on the criminal charge of illegal reentry that is pending against him, it does not yet appear to this Court that any member of the Executive Branch has violated any court order. Thus, Defendant's request for a finding of contempt is unwarranted. There is also not need for the magistrate judge to certify any facts. Further, because ICE may proceed with the removal of Mr. Alvarez-Trujillo from the United States under the INA, this Court will not order a stay of removal proceedings and will not order that Mr. Alvarez-Trujillo be brought back to this district on Defendant's pending motion. Accordingly, those motions are denied to the extent they seek such relief.

This does not mean, however, that this Court is powerless to prevent the Executive Branch from ignoring its obligations under the BRA. As stated by District Judge Rosenbaum in the *Barrera-Omana* case:

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II [Executive Branch] agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and

> individualized basis. This Court ought not run interference for the
> prosecuting arm of the government.

*Barrera-Omana,* 638 F. Supp. 2d at 1111-12.

As noted above, Mr. Alvarez-Trujillo's trial is currently scheduled for November 13, 2012, in Portland. He has been kept by ICE in Tacoma, Washington, and out of the District of Oregon for more than one month. Not only has this deprived Mr. Alvarez-Trujillo of the comfort and support of his family and friends, it has deprived him and his court-appointed counsel of the ability to meet and work together to prepare for his defense at trial without undue inconvenience or hardship, thereby jeopardizing not only his statutory rights under the BRA, but also his rights under the Fifth, Sixth, and Eighth Amendments and under basic principles of fundamental fairness.

A district court has inherent supervisory powers over its processes and those who appear before it. *See generally United States v. Hasting,* 461 U.S. 499, 505 (1983). These supervisory powers include, but are not limited to, the ability "to implement a remedy for a violation of recognized rights." *United States v. W.R. Grace,* 526 F.3d 499, 511 n.9 (9th Cir. 2008) (citation omitted); *see also United States v. Stinson,* 647 F.3d 1196, 1210 (9th Cir. 2011) (recognizing that even when government conduct does not rise to the level of a due process violation, a court nonetheless may dismiss an indictment using its supervisory powers). As the Ninth Circuit expressly recognized: "Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno,* 951 F.2d 1089, 1092 (9th Cir. 1991). It is unclear, however, whether a lesser remedial action is available, and the Executive Branch will be afforded an opportunity to show that it is.

Thus, if the Executive Branch chooses to forgo criminal prosecution of Mr. Alvarez-Trujillo on the pending charge of illegal reentry and deport him from the United States, as previously stated, there is nothing further for this Court to do. If, however, the Executive Branch chooses to pursue the criminal prosecution of Mr. Alvarez-Trujillo under the pending charge, then he must be promptly returned to the District of Oregon and released pending trial on the pretrial release conditions previously imposed by Magistrate Judge Acosta in accordance with the BRA. That is Defendant's statutory right under the BRA, and its continuing violation threatens Defendant's constitutional rights.

Accordingly, if Mr. Alvarez-Trujillo is returned to this district and released on the conditions previously imposed by Magistrate Judge Acosta by 5:00 p.m. Pacific time on Monday, November 5, 2012, then the pending criminal prosecution may proceed. If, however, he is not returned and released by that date and time, the pending criminal charge will be dismissed with prejudice.[8]

---

[8] The government also urges that dismissal is an extraordinary remedy and is unnecessary in this case because the Court could issue a Writ of Habeas Corpus *ad prosequendum.* Under 28 U.S.C. § 2241, a district court is empowered to issue a writ to secure the presence of a defendant for testimony or for trial. The government is correct that such a writ may be used to bring a prisoner into a district court in order to stand trial. *See generally Carbo v. United States,* 364 U.S. 611, 619 (1961). The government is incorrect, however, that the issuance of such a writ will remedy the violation of a defendant's right to *pretrial release* under the BRA. Because such a writ will not result in the pretrial release of Mr. Alvarez-Trujillo in the District of Oregon subject only to the conditions imposed by Judge Acosta, it will not remedy the violation of Defendant's rights under that law to pretrial release. To allow the Executive Branch to present Mr. Alvarez-Trujillo in the District Court on the day scheduled for his trial, November 13, 2012, and thereby declare that the government elects to proceed with his criminal prosecution would, for all practical purposes, deprive Mr. Alvarez-Trujillo of his right to pretrial release under the BRA. Thus, the Executive Branch must make its election at a time that meaningfully precedes the scheduled trial date.

### III.   CONCLUSION

Defendant's motion for an order to show cause, for certification of facts, and for other relief as appropriate (Doc. 13) is GRANTED IN PART AND DENIED IN PART.  The Executive Branch has one week from the date of this Opinion and Order to return Defendant to the District of Oregon and release him subject to the conditions previously determined by Magistrate Judge Acosta.  If that does not occur by 5:00 p.m. Pacific time on Monday, November 5, 2012, the criminal charge now pending against Defendant will be dismissed with prejudice.  Defendant's motion for a stay of his removal proceeding and for an order directing his transport to the District of Oregon to attend the hearing set for October 10, 2012 (Doc. 17) is DENIED.

DATED this 29th day of October, 2012.


/s/  Michael H. Simon_____
Michael H. Simon
United States District Judge